Trotter *v.* Heckscher.

42  251
42  662

### CHARLES W. TROTTER

*v.*

### CHARLES A. HECKSCHER et al.

The complainant agreed to mine and deliver to the defendants ore containing twenty-six per cent. of oxide of zinc, which he did, and which they accepted, without objections on account of moisture in the zinc produced therefrom by the defendants, until after the expiration of three years.—*Held*, that the defendants are estopped; *held*, *also*, that the complainant was not accountable for the moisture which might appear in the zinc, as assayed by defendants, since he only agreed to deliver ore containing a certain percentage of zinc, no other condition being imposed by the contract.

Trotter v. Heckscher.

*Messrs. C. & R. Wayne Parker,* for complainant.

*Mr. C. D. Thompson,* and *Mr. George Northrup* (of Philadelphia), for defendants.

BIRD, V. C.

The defendants come in by their petition, in a cause which has been pending for several years, and ask the court to award them compensation, to be paid or allowed by the complainant, for the moisture which is found in the oxide of zinc extracted from ore known as franklinite, sold to them by the complainant. On June 2d, 1881, Trotter agreed with Heckscher that he was in the undisturbed and undisputed possession of a certain mine containing said ore; that he held said mine by virtue of a lease for the term of thirty years from March 6th, 1877. The contract between these parties covered all that period from June 2d, 1881, a period of about twenty-seven years; this alone shows that the question involved is one of great importance, since defendants claim that they suffer a loss of several hundred dollars every year.

By the contract Trotter agreed to deliver twelve thousand tons of said franklinite ore, in regular monthly shipments of one thousand tons or thereabout, each month, to said Heckscher, on board the railroad cars at Franklin, a place hard by the mine. Trotter also agreed that all the said ore so delivered should contain at least twenty-six per cent. of oxide of zinc. It was agreed that Heckscher should not be compelled to take or pay for any ore containing less than twenty-six per cent. of oxide of zinc. Although there was a serious question between the parties as upon whom should devolve the responsibility of making the proper assays to determine the percentage of oxide of zinc, yet the defendants undertook this responsibility, to which Trotter submitted without complaint for some time, which action upon the part of both Trotter and the defendants led the court of errors and appeals, in the cause wherein this petition is filed (*Trotter* v. *Heckscher, 13 Stew. Eq. 612*), to decide that the responsibility for and the right to make the assay belonged to Heckscher. As will appear in the principal case, disputes arose

between the parties respecting the sampling and assaying of these ores.   The case shows that hundreds of pages of testimony were taken upon these branches of the case.   Fully two years elapsed before the question respecting moisture was raised.   For three years, at least, the defendants who now raise this question, were in receipt of these ores, and had the assaying done in their own works, and to some extent under their own supervision.   These facts, I think, are worthy of consideration, for it seems to me that defendants are estopped from raising this question under the circumstances of this case, after this lapse of time, and after they have received such large quantities of ore, and made the assays of the oxide of zinc therein.

But again.   Has Trotter fulfilled his contract, which was to ship ore containing at least twenty-six per cent. of oxide of zinc? It seems to me that he has.   He agreed to deliver upon the cars ore containing at least twenty-six per cent. of oxide of zinc.   The ore was to contain twenty-six per cent. of the oxide of zinc. Nothing else is said about the zinc; its character or quality is not mentioned.   It is not said whether the zinc shall be pure, fine or superfine; of a middling grade or of the highest grade; nor whether it shall be absolutely dry; nor is any other condition agreed upon.   I think that the defendants are in the same situation as though they had contracted for corn or other grain, to be delivered to them as soon as threshed from the shock, in the field, rather than grain which had been stored for a long time or which had been kiln-dried; or had bought standing timber, or any unseasoned lumber, or any other material in its native state.   It is so plain that in such case the purchaser could not add another term to the contract and insist that he bought the grain, or lumber, or other material, free from moisture, that argument is unnecessary.   So with the matter now before me. Heckscher purchased the ore in its natural state, to be taken from the bowels of the earth by Trotter, sampled it, and had it assayed, and reported that it produced a given percentage of oxide of zinc.   All that Trotter agreed to do was to mine and deliver the ore on the cars.   This he did.   In my judgment, Trotter performed his contract in this respect, and the defendants are

not entitled to any allowance on account of the moisture that the zinc may contain after it has been extracted by assaying.

I will advise an order denying the motion.